IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) PIVOTAL HOME SOLUTIONS, LLC ) ) Defendant. ) | Civil Action No: **COMPLAINT** JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Marcqueisha White. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission ("EEOC") alleges that Pivotal Home Solutions, L.L.C. ("Pivotal") violated the Americans with Disability Act (as amended), 42 U.S.C. § 12112(a) and (b), when it subjected White to an adverse employment action because of her disability, as defined by 42 U.S.C. 12102(1).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to §107(a) of the ADA, 42 U.S.C. § 12117(a) which incorporates by reference sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 194 ("Title VII), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed in the Northern District of Illinois.

## PARTIES AND OTHER PERSONS

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and by Section 107(a) of the ADA, 42 U.S.C. 12117(a), which incorporates 42 U.S.C.§ 2000e-5(f)(1) and (3) by reference.

4. At all relevant times, Pivotal has continuously been and is now a corporation doing business in the Northern District of Illinois in the city of Naperville, Illinois, and has continuously had and does now have at least fifteen (15) employees.

5. At all relevant times, Pivotal has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Sections 701(g) and (h) of Title VII, 42 U.S.C. 2000e(g) and (h), and Section 101(5) of the ADA, 42 U.S.C. § 12111(5), which incorporates the preceding sections by reference.

6. At all relevant times, Pivotal has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Marcqueisha White filed a charge with EEOC alleging violations of Title VII and the ADA, by Pivotal.

8. On May 24, 2021, EEOC issued a Letter of Determination on White's charge finding reasonable cause to believe that Pivotal violated Title VII and the ADA.

9. EEOC invited Pivotal to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Pivotal to provide it the opportunity to remedy discriminatory practices described in the Letters of Determination.

11. By letter dated July 21, 2021, EEOC informed Pivotal that it was unable to secure a conciliation agreement acceptable to EEOC.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. On July 26, 2017, White began working at Pivotal as a Dispatcher through a staffing firm.

14. From July 26, 2017 through January 2018, Pivotal was White's employer.

15. From July 26, 2017 through January 2018, Pivotal exerted control over the conduct of White's work:

   a. Pivotal provided White with direction on scheduling of her work.

   b. Pivotal provided White with direction on performance of her work.

   c. Pivotal trained White to perform her job duties as a Dispatcher.

   d. White's position at Pivotal did not require significant specialized skills.

   e. From July 26, 2017 through January 2018, Pivotal was responsible for the costs of operation related to White's service, including providing her with equipment, supplies, and a workplace.

16. White's placement at Pivotal was open-ended and not set to last for a particular term.

17. In January 2018, White was a qualified individual with a disability under the ADA. 42 U.S.C. § 12102 (a), (c); 42 U.S.C. § 12111(8)

   a. Since at least January 2018, White has been diagnosed with post-traumatic stress disorder ("PTSD") and anxiety.

    b. White's PTSD substantially limits a number of major life activities including emotional regulation, the function of her brain, eating, sleeping, breathing, and thinking.

    c. White's anxiety substantially limits a number of major life activities including emotional regulation, the function of her brain, eating, sleeping, breathing, and thinking.

    d. From July 2017 through January 2018, White could and did perform the essential functions of her position as a Dispatcher without the need for a reasonable accommodation.

18. In January 2018, Pivotal discriminated against White on the basis of her disability when it took an adverse employment action because of her actual or perceived disability. 42 U.S.C. § 12102(a), (c); 42 U.S.C. § 12112(a)

    a. On January 23, 2018, White informed her supervisor at Pivotal, Jose Corona, that she had had a panic attack, and that she was prescribed new medication to treat her PTSD and anxiety.

    b. On January 24, 2018, Corona contacted the staffing company who had placed White at Pivotal and instructed them to end her assignment because White had a "nervous breakdown."

    c. In response to Corona's instruction, the employee at the staffing company informed Corona of the risk of terminating an employee for a medical condition that does not affect her performance.

    d. Despite this information, Corona persisted in his instruction to end White's assignment.

  e. White was terminated by Pivotal from her work with the Company.

 19. The effect of the practices complained of in paragraph 18, above, has been to deprive White of equal employment opportunities and otherwise adversely affect his status as an employee on the basis of disability.

 20. The unlawful employment practices complained of were intentional.

 21. The unlawful employment practices complied of were done with malice or with reckless indifference to the federally protected rights of White.

## **PRAYER FOR RELIEF**

Wherefore, EEOC respectfully requests that this Court

 A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practices that violate the ADA;

 B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled employees, and which eradicate the effects of its past and present unlawful employment practices described herein;

 C. Order Defendant to make White whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described herein, including without limitation, reinstatement;

 D. Order Defendant to make White whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein;

 E. Order Defendant to make White whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described herein, including but

not limited to emotional pain, suffering, loss of enjoyment of life and humiliation, in amounts to be determined at trial;

  F. Order Defendant to pay White punitive damages for its malicious and reckless conduct in amounts to be determined at trial;

  G. Grant such further relief as the Court deems necessary and proper in the public interest; and

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMANDED

EEOC requests a jury trial on all questions of fact raised by its complaint

Gwendolyn Reams
Acting General Counsel

Equal Employment
Opportunity Commission
131 M. St. NE
Washington, DC 20507

Gregory Gochanour
Regional Attorney

Deborah Hamilton
Supervisory Trial Attorney

s/ Jonathan Delozano
Jonathan Delozano
Trial Attorney
Equal Employment
Opportunity Commission
230 S. Dearborn St. Ste. 2900
Chicago, IL 60604
(312) 872-9695
jonathan.delozano@eeoc.gov